FILED

2010 Feb-09  AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLARENCE WOODARD, JR., | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 2:08-CV-2002-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.      Introduction.

The claimant, Clarence Woodard, Jr. ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and period of disability.  Mr. Woodard timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Woodard was fifty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision and he has "at least a high school

education." (Tr. at 22.)  His past work experiences include employment as a pipe inspector, doorman, and courier.  (*Id.* at 80.)  Mr. Woodard claims that he became disabled on January 1, 2001[1], due to lower back pain, left knee problems, deafness in the left ear, and high blood pressure.  (*Id.* at 71.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty  v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

---

[1]This is the original date on Mr. Woodard's claim and not the amended date discussed during the ALJ's hearing.  The reason for the discrepancy will be explained below in Part III, A.

1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §

404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Woodard meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 17.)  He further determined that Mr. Woodard has not engaged in substantial gainful activity since the alleged onset of his disability.  (*Id.*)  According to the ALJ, Plaintiff's "hypertension; osteoarthritis of the great toes metacarpophalangeal joints; mild degenerative changes of the lumbar spine; and mild degenerative changes of the left knee" are considered "severe" based on the requirements set forth in the regulations (*Id.*)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 20.)  The ALJ determined that Mr. Woodard has the following residual functional capacity: "medium work as defined in 20 CFR 404.1567(c) while experiencing no more than moderate pain." (*Id.*)

Accepting the vocational expert's testimony, the ALJ found that Mr. Woodard is "able to perform past relevant work" as defined by the

regulations. (*Id*. at 21.)  He determined that "[t]ransferability of job skills is not material to the determination of the [Plaintiff's] disability status." (*Id*. at 22.)  After considering his "age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*.) Jobs compatible with Mr. Woodard's RFC include "cleaner," "driver," and "assembler/packer" with 15,000; 20,000; and 10,000 regional jobs each, respectively. (*Id*.)

The ALJ concluded his findings by stating that Plaintiff "is capable of performing past relevant work *and* other work that exists in significant numbers in the economy," and that therefore he was not "under a disability, as defined in the Social Security Act, from January 1, 2001 through the date of this decision." (*Id*. at 23.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal

standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622,

624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.     Discussion.

Mr. Woodard alleges that the ALJ's decision should be reversed for two reasons. (Doc. 9. at 11-14.)  First, he believes that the ALJ failed to develop a full and fair record. (*Id*. at 13-14.)  Second, Plaintiff contends that there is insufficient evidence to support the ALJ's RFC findings. (*Id*. at 11-12.)

A.     Duty to Develop the Record.

The ALJ is duty-bound to develop a "full and fair record" during the disability proceedings.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 404.1512(d) (explaining the ALJ's responsibility to create a complete record).  However, the claimant is "responsible for producing evidence to support his claim." *Ellison*, 355 F.3d  at 1276; *see also* 20 C.F.R. § 404.1512(a) (explaining claimant's responsibility to provide medical and all other evidence to help ALJ reach conclusion); 20 C.F.R. § 404.1512(c) (explaining claimant's responsibility to show how the evidence presented  shows  an  impairment  on  the  claimant's  functioning).

Furthermore, the Federal Rules of Civil Procedure provide that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.  Accordingly, the fact finding process need only be fair, not perfect.  In that vein, this Court looks for "evidentiary gaps which result in unfairness or 'clear prejudice'" to the plaintiff when scrutinizing the record. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).  Despite the errors argued by Plaintiff, this Court finds that the ALJ did develop a full record.

Plaintiff first argues that the ALJ failed in his duty to maintain a full and fair record at "step one in the sequential analysis."  (Doc. 9 at 8.) Plaintiff contends, and indeed the transcript shows, that the onset date for the disability should have been amended from January 1, 2001 to January 15, 2005.  (Doc. 9 at 9.); (Tr. at 222.) Plaintiff originally stated that he stopped working at the beginning of 2001. (Tr. at 216.)  After the ALJ explored Plaintiff's income history from 2001 through 2004, the ALJ and Plaintiff

agreed that the actual onset date should be switched to January 15, 2005.[2] (Tr. at 222.)  Plaintiff urges that this failure to mention the amendment  is "particularly egregious" in light of the ALJ's extensive efforts to build the record concerning this issue. (Doc. 9 at 9.)  Moreover, Plaintiff insinuates, without specifically mentioning, the possible existence of other facts that the ALJ might have left out of the opinion. (*Id*.)

The onset date is part of the first step the ALJ performs when beginning the five step sequential analysis for disability claims.  To be clear, the first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  For the ALJ's purpose, the findings about "substantial gainful activity" are key, and the ALJ found in Plaintiff's favor declaring "[t]he claimant has not engaged in substantial gainful activity" since January 1, 2001.[3]  (Tr. at 17.)  Because either date provides the same answer to the ALJ's first question, the

---

[2]The date that Plaintiff was sure that he no longer engaged in "substantial gainful activity." (Tr. at 222.)

[3]Which necessarily includes the later date.

difference in the two dates does not affect the rest of the analysis. Therefore, the ALJ's error was harmless.  *See* FED. R. CIV. P. 61; *Perry v. Astrue*, 280 F. App'x. 887, 893-94 (11th Cir. 2008); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that factual mistakes are harmless error when they would not affect the outcome of the case).

Alternatively, Plaintiff contends that the time lapse between the hearing conducted by the ALJ and the date of the ALJ's opinion amounted to a "due process violation." (Doc. 9 at 10.)  Plaintiff continues by arguing that it is "unconscionable" for a judge to delay an opinion for "nearly two years[4] due to his inability to render a timely decision." (*Id*.)   Plaintiff believes that the ALJ should have ordered a "supplemental hearing in order to supplement the record if [for nothing else then] to allow for further development by Plaintiff."  (Doc. 9 at 13.)  Essentially, Plaintiff believes that the ALJ failed to take note of any changes in Plaintiff's health during the 20 month span between the hearing and decision.  The facts of this case do not support such a claim.

_____

[4]The date of the hearing was August 2, 2006, and the decision was rendered March 28, 2008.  This delay amounts to roughly twenty months.

The ALJ allowed for a delay between the hearing and the issuance of his decision in order to give Plaintiff a chance to complete his collection of evidence.  At the close of the hearing[5], the ALJ informed Plaintiff[6] that his evidence was lacking and that he would give Plaintiff more time to develop the record. (Tr. at 234.)  After the hearing, Dr. Claybon evaluated Plaintiff, (*Id*. at 191-97) and the ALJ had Plaintiff see Dr. Romeo for yet another evaluation. (*Id*. at 198-209.)  Upon receipt of Dr. Romeo's report, the ALJ informed Plaintiff via a letter dated December 7, 2008,  that he had received Romeo's report and he had added it to the record. (*Id*. at 112.)  The letter also informed Plaintiff that he had limited time to act[7] before the ALJ would close the record and make his decision based on the newly completed record. (*Id*. at 113.)  Plaintiff never responded to the letter, and,

_____

[5]This took place after Plaintiff explained that the record contained all existing medical evidence. (Tr. at 213.)

[6]Plaintiff's representative explained that he "agree[d] with what [the judge] said as far as the evidence [is concerned]."  There was apparently some agreement that Plaintiff needed to pursue more medical testimony.

[7]The letter explicitly stated that "If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the enclosed report(s).  I will then enter the enclosed evidence in the record and issue my decision."

accordingly, the ALJ issued his decision on March 28, 2008. (*Id.* at 23.) Ultimately, Plaintiff's contention that the ALJ never contacted him during the delay is clearly controverted by evidence.[8]

The ALJ's delay was justified by his attempt to complete a full and fair record. To reiterate, the ALJ is required to complete a full and fair record but the claimant must provide the evidence for the ALJ to make his decision. 20 C.F.R. §§ 404.1512(d), 404.1512(a); *Ellison*, 355 F.3d at 1276. In the present case, the ALJ took the time between the hearing and the decision to allow Plaintiff to fill the evidentiary gaps in his record. Plaintiff attempted to fill these gaps by seeing doctors, but none of the doctors found anything substantial. (Tr. at 191-209.) Therefore, the ALJ gave Plaintiff ample time to provide supporting evidence, and, when paired with the complete picture that the ALJ has provided in the record, there is no evidence of an incomplete record or a due process violation. *See* 20 C.F.R. § 404.1512(d); *Graham*, 129 F.3d at 1423 (explaining that evidentiary gaps must result in "clear prejudice" in order to constitute an incomplete record)

---

[8]Both the order to see Dr. Romeo and the letter to confirm that Plaintiff did not want a supplemental hearing before the decision was to be issued took place during that delay.

For the foregoing reasons, Plaintiff's objections to the record are without merit.

B.     Plaintiff's Residual Functioning Capacity.

Plaintiff's last allegation is that there was not enough evidence to support the ALJ's Residual Function Capacity (RFC) finding.  RFC is defined as the amount of labor that can be preformed by a claimant despite physical and mental limits.  *See* 20 C.F.R. § 404.1545(a)(1) (2008).  The ALJ has the ultimate responsibility for determining a claimant's RFC based on the medical evidence.  20 C.F.R. § 404.1546(c) (2008); *See also* 20C.F.R. § 404.1527(e)(2) (2008) (explaining that the final determination of RFC rests with the Commissioner but is made in light of available objective medical evidence).  To reiterate, the ALJ must rely on "substantial evidence" in order to make his decision, and, although this evidence could be less than a preponderance, it  must have some weight.  *Miles*, 84 F.3d at 1400.  This Court finds that the ALJ relied on such evidence in this case, and his findings are supported accordingly.

In order to make his RFC finding, the ALJ relied on three key doctor's reports.  The first report, by Dr. Romeo on May 5, 2005,  essentially found

little to no limitations on Plaintiff's ability to work. (Tr. at 149-58.)

Namely, Dr. Romeo found that Plaintiff had the ability to frequently carry

and lift 40 pounds and occasionally carry and lift 60 pounds. (Tr. at 154.)

In the next report, from Aug 3, 2006, Davor Luketic, M.D.,  interpreted Dr.

Claybon's examination results.  Despite a diagnosis of pain in the left knee

and right foot, Dr. Luketic found "*mild* degenerative changes" around the

left knee and felt that the findings concerning the right foot were not

"significant."  (Tr. at 193, 195.) (emphasis added)

      The ALJ also considered a second report from Dr. Romeo dated

November 28, 2006. (*Id*. at 20.)  In this report, Dr. Romeo amended his

earlier findings to say that Plaintiff could frequently carry and lift 30 pounds

and occasionally carry and lift 50 pounds[9].  (*Id*. at 205.)  Dr. Romeo also

noted a "*moderate* degenerative change" in the big toe of the right foot and

"*mild* degenerative" change in the left knee. (*Id*. at 203-04.) (emphasis

added)   Furthermore, the ALJ also consulted the State Agency Single

Decision Maker's report which concluded that the claimant was not disabled

---

      [9]The earlier report explained that Plaintiff had the ability to frequently carry and
lift 40 pounds and occasionally carry and lift 60 pounds.

and could perform the activities as expressed by Dr. Romeo's second report. (Tr. 159-66.)  By consulting the aforementioned reports, the ALJ fulfilled his obligation to consider the objective evidence of claimant's symptoms as required by applicable law.  *See* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 96-4p; Soc. Sec. Ruling 96-7p.

When determining the RFC of an individual, the ALJ must consult the Social Security regulations.  The regulations define "medium work" as "work [that] involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c) (2008).  Clearly, the ALJ's factual findings, as supported by Dr. Romeo's reports, support an RFC finding of medium work. Even if the evidence was less clear than in this case, as long as there is substantial evidence, the ALJ's assessment will stand. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).  Therefore, the ALJ's RFC finding of medium work "while experiencing no more than moderate pain" is adequately supported by the record.  (Tr. at 20.)

Both the ALJ's RFC finding and the ALJ's finding that Plaintiff could perform past relevant work are buttressed by the Vocational Expert's (VE)

testimony. (Tr. at 21-22.)  The VE opined that Plaintiff's past work was light and semi-skilled. (Tr. at 231-32.)  The VE further testified that Plaintiff was still able to perform his past work and that "moderate pain would not limit [nor] interfere with the ability to work on a regular basis." (Tr. at 231.)  The Social Security regulations explain that "[i]f someone can do medium work, we will determine that he or she can also do sedentary or light work."  20 C.F.R. § 404.1567(c).   In light of Plaintiff's medium work RFC, these regulations strengthen the VE's claim that Plaintiff can still perform his past light work.  Since Plaintiff can still perform his past relevant work, the ALJ had no choice but to find that Plaintiff was not disabled under the regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (explaining that claimants who can still perform old work requirements are not disabled).

Plaintiff contends that the ALJ did not take into account his severe hypertension while determining his RFC. (Doc. 9 at 11-12.)  However, the ALJ, noting the medical evidence, listed Plaintiff's hypertension as a severe impairment. (Tr. at 17.)  The ALJ consulted that same evidence and reached the same conclusion as the doctors: Plaintiff's hypertension does not change Plaintiff's functional capacity. (Tr. at 114-209.)  Since Plaintiff failed to

provide any objective evidence to show how his hypertension affected his functional capacity, only the evidence on the record will be used. *See* 20 C.F.R. § 404.1512(c). The record shows only that Plaintiff's blood pressure was high, but hypertension, alone, does not demonstrate any limitation on Plaintiff's ability to work. *See Moore*, 405 F.3d at 1213 n.6 (11th Cir. 2005); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (explaining that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality") The ALJ's RFC finding correctly rested on appropriate objective medical evidence and not Plaintiff's speculation.

Ultimately, there is substantial evidence to support the ALJ's RFC finding and the finding that Plaintiff is not disabled under the Social Security Act. Therefore, Plaintiff's claim must fail.

IV.   Conclusion.

Upon a thorough review of the administrative record, and after considering all of Mr. Woodard's arguments, the Court finds the

Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  A separate order will be entered.

Done this <u>9th</u> day of <u>February 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671